# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAVID M.,**

       **Plaintiff,**

      **Case No. 1:20-cv-19175**

    **v.**                **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff David M. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 14, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since December 21, 2017. R. 82, 96, 181−89. The application was denied initially and upon reconsideration. R. 112−14, 120−25. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 127–28. Administrative Law Judge ("ALJ") Lisa Hibner Olson held

a hearing on July 16, 2020, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 29–81. In a decision dated September 3, 2020, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2018, the

application date, through the date of that decision. R. 10–19. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

November 9, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On May 11, 2021, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 13.[2] On that same day, the case was reassigned to the undersigned. ECF No.

14. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 52 years old on the date on which his application was filed. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical and lumbar degenerative disc disease; hypertension; chronic obstructive pulmonary disease ("COPD"); obesity; carpal tunnel syndrome ("CTS"); radiculopathy; and post cardiac stent. *Id*.  The ALJ also found that Plaintiff's diagnosed gastroesophageal reflux disease ("GERD"), hyperlipidemia, and visual limitation were not severe. R. 13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–14.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 14–18. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a floor layer. R. 17–18.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 90,000 jobs as an assembler; approximately 190,000 jobs as a hand packer; approximately 220,000 jobs as an inspector—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 18–19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2018, the application date, through the date of the decision. R. 19.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 19; *Plaintiff's Reply Brief,* ECF No. 23. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 22.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.      Roger Arumugam, M.D.

Roger Arumugam, M.D., conducted a physical examination of Plaintiff on December 18, 2017. R. 332−34.[3] Dr. Arumugam observed that Plaintiff was able to walk into the office and mount the examination table without an assistive device. R. 332−33. Upon physical examination, Dr. Arumugam noted, *inter alia*, that Plaintiff's gait was within normal limits and that Plaintiff was able to heel to toe walk but was unable to perform the heel bounce test "due to existing foot issue[.]" R. 333. Plaintiff's muscle bulk was symmetrical bilaterally with no muscle wastage noted and with full motor strength (5/5) in all extremities. R. 334. Dr. Arumugam noted no sensory deficit to light touch in the upper and lower extremities bilaterally and reflexes of all extremities within normal limits with no clonus or tetanus noted. *Id*. Dr. Arumugam diagnosed hypertension, lumbago, and cervicalgia. *Id*. Dr. Arumugam went on to provide the following functional assessment and medical source statement:

> Based on the claimant's medical records, my physical examination and the medical history from the claimant, it is my opinion that *there is no evidence of functional impairment at the time of the examination*.

---

[3] The ALJ noted that it "is not clear who ordered this exam[.]" R. 16.

Comment:

   • No deficit with spinal exam
   • No gait deficit
   • No deficit with bilateral handgrip and able to button shirt and turn
    doorknob.
   • No motor deficit.

Recommendation:
   1. Follow up with PCP

*Id*. (emphasis added).

### B.  Dareld Morris, D.O.

Dareld Morris, D.O., conducted a consultative examination at the request of the state

agency on November 9, 2018. R. 349−54. Plaintiff presented in no acute distress and

appropriately interacted with Dr. Morris and his staff. R. 349. Upon examination, Dr. Morris

noted Plaintiff had decreased breath sounds, but not clear to auscultation bilaterally with no rales,

wheezes or rhonchi with non-labored breathing and no use of respiration accessory. R. 350. Dr.

Morris noted no edema or clubbing in the extremities with palpable peripheral pulses equal in the

upper and lower bilateral extremities. *Id*. Plaintiff's gait and station were normal as was his pinch

and grip (5/5). *Id*. Dr. Morris reported full range of motion with normal muscle strength (5/5)

throughout. *Id.* Upon a spinal examination, Dr. Morris noted the following positive tests: cervical

O'Donohue's test, cervical compression test, Graenslen's test, sacral compression test, and

straight leg raising tests (sitting and supine) bilaterally at 60 degrees. *Id*. Dr. Morris noted

tenderness in the PVM lumbar bilaterally, but no spasm. *Id*. Deep tendon reflexes were +2/4 and

symmetrical. *Id*. Dr. Morris noted that Plaintiff was able to perform toe raises, "but NOT able to

perform heel or squat test maneuver." *Id*. (emphasis in the original). Dr. Morris assessed

hypertension, cervical and lumbar disc herniation with myelopathy, back pain, and COPD. *Id*.

Dr. Morris further stated that Plaintiff "is able to ambulate without assistance. *Cannot long*

*stand/walk* or lift over 20#; speaking, memory, and social skills intact; Grip and fine manipulation skills intact[.]" *Id*. (emphasis added). Dr. Morris completed a three-page form entitled, "Range of Motion Report Form[,]" detailing Plaintiff's range of motion measurements. R. 352−54.

## V.   DISCUSSION

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC for a limited range of light work. *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 6−14; *Plaintiff's Reply Brief*, ECF No. 23. Plaintiff specifically argues that the ALJ erred in considering Dr. Morris' opinion. *Id*. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: Occasionally climb ramps or stairs. Never climb ladders, ropes or scaffolds. Occasionally stoop, crouch or kneel, never crawl. Frequent fingering, handling, feeling bilaterally. Avoid concentrated exposure to extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas and exposure to chemicals. No exposure to workplace hazards such as moving machinery or unprotected heights.

R. 14. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, an EMG performed in April 2014 which resulted in findings consistent with right C5-6-7, left L5 and bilateral radiculopathy; Dr. Arumugam's December 2017 assessment, during which Plaintiff was able to walk into the office and get on the examination table without using an assistive device and Dr. Arumugam noted some limits in range of motion in Plaintiff's spine, but an ability to walk heel to toe with a normal gait; a January 2018 Lexiscan nuclear stress test which reflected fixed defect of the interior wall and reduced ejection fraction, at 33%, and no sign of ischemia with correlation with echocardiogram recommended; an August 2018 transthoracic echocardiogram which showed no wall motion abnormalities and an ejection fraction in a range of 60 to 65; a notation of mild mitral and tricuspid regurgitation as well as a moderate degree of diastolic dysfunction; Plaintiff's report of chest pain and shortness of breath with exertion at a September 2018 follow up cardiac examination but, on examination, his lungs were clear; Dr. Morris' consultative examination, during which Plaintiff presented without acute distress and with normal pinch and grip strength; Dr. Morris' notation that Plaintiff had decreased range of motion of the cervical and lumbar areas of the spine and positive straight leg raising, but full range of motion and muscle strength in all extremities; Plaintiff could not heel to toe walk or squat but he could stand on his toes, walk without assistance, and had a normal gait

11

and station; the observation of a severe mid lesion of the right coronary during an August 2019 angiography and left heart catheterization, following which three stents were placed; Plaintiff's brief hospitalization in September 2019, with diagnoses of anaphylaxis, COPD, hypertension, cardiac disease and chronic back pain; November 2019 and January 2020 appointments during which Plaintiff's coronary artery disease was described as stable and asymptomatic; Plaintiff's March 2020 complaint of carpal tunnel syndrome in both hands, and the notation that his blood pressure was controlled with medication. R. 15–17. The ALJ further explained as follows:

> In summary, while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the allegations are considerably broader and more restricted than is established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.
>
> The claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity assessment, to the extent that they are consistent with the evidence as a whole. Limitation to a light exertional level with limitations regarding climbing and postural movements accounts for the claimant's spinal pain as well as potential fatigue or discomfort from hypertension and/or other cardiac related issues post stenting. COPD is taken into account with avoidance of common respiratory/pulmonary irritants. The claimant's mild CTS is taken into account with limiting fingering, handling and feeling to a frequent basis, rather than constant use. Potential distraction from pain is accounted for in lack of exposure to typical workplace hazards.

R. 17. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination, arguing that the ALJ erred in considering Dr. Morris' opinion. *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 8–9; *Plaintiff's Reply Brief*, ECF No. 23. This Court disagrees.

12

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

---

[4] As previously noted, Plaintiff's claim was filed on May 14, 2018.

including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). "Specifically, the ALJ must explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*,

No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ found Dr. Morris' opinion to be "of

limited persuasion[,]" reasoning as follows:

> Regarding opinion evidence, in November 2018, Dareld Morris, DO provided a
> consultative examination at the request of the State agency. The claimant presented
> without acute distress, decreased breath sound or wheezing. Normal gait and
> station, as well as pinch and grip strength were observed. The claimant had full
> range of motion and muscle strength of all extremities. Decreased range of motion
> of the cervical and lumbar areas of the spine was noted, along with positive straight
> leg raising. The claimant was able to stand on toes, but could not heel to toe walk
> or squat. Dr. Morris opined the claimant could not stand or walk for long or lift
> over 20 pounds. Grip and fine manipulation skills were described as intact. (Exhibit
> B10F). This assessment is of limited persuasion, as the claimant was observed as
> ambulating without assistance or use of an assistive device. The record does support
> limitation to a light exertion, which is defined as occasionally lifting/carrying of 20
> pounds and frequent lifting/carrying of 20 pounds. However, the assessment of
> standing and walking limitations is vague and conclusory.

R. 16.

Plaintiff complains that the ALJ improperly dismissed Dr. Morris' finding that Plaintiff

"cannot long stand/walk" because the ALJ found this opinion "vague and conclusory." *Plaintiff's*

*Memorandum of Law*, ECF No. 19, p. 9. Plaintiff contends that this opinion is neither vague nor

conclusory, arguing that Dr. Morris based the statement on a physical examination and objective

evidence, such as Plaintiff's positive Graenslen's test and positive straight leg raising test. *Id.*

Plaintiff also argues that, although the ALJ conceded that "the record contains objective medical

evidence of degenerative disc disease in both the cervical and lumbosacral spines with

radiculopathy, with impingement of the thecal sac and with multilevel neural foraminal

stenosis[,]" the ALJ "attributes almost no standing and walking limitations to these conditions."

*Id.* (citing R. 15). Plaintiff also argues that the ALJ's discounting of Dr. Arumugam's finding[5] that Plaintiff had no functional impairment was inconsistent with the ALJ's finding of evidence of impairment. *Id.* at 8. Plaintiff further complains that the ALJ erred in relying on the "non-treating, non-examining, [state agency] paper reviewers [] "who did not have all of the 'paper' at the time of their review[.]" *Plaintiff's Reply Brief*, ECF No. 23, p. 3; *see also Plaintiff's Memorandum of Law*, ECF No. 19, p. 8.

Plaintiff's arguments are not well taken. Because Dr. Morris opined that Plaintiff "cannot long stand/walk[,]" but failed to specify the duration or distance of Plaintiff's ability to stand or walk, R. 350, the ALJ properly found that, *inter alia*, this portion of Dr. Morris' opinion was vague and of limited persuasive value. R. 16; *see also Rice v. Kijakazi*, No. 3:20-CV-00750-RSE, 2022 WL 345652, at *4 (W.D. Ky. Feb. 4, 2022) (finding the ALJ appropriately accepted one physician's findings instead of accepting another physician's "ambiguous limitation on 'safety-sensitive duties' generally and walking or standing 'for long periods'"); *Daywalt v.*

_____

[5] The ALJ considered Dr. Arumugam's findings and found as follows:

> In December 2017, the claimant had an assessment due to neck pain, lower back pain and left leg numbness. It is not clear who ordered this exam, which was performed by Roger Arumugam, MD. The claimant was able to walk into the office, and get on the examination table without use of an assistive device. The claimant's vision was noted as 20/200 in the left and 20/50 in the right without correction. Gait was described as within normal limits. The claimant was able to heel to toe walk. There were limits regarding range of motion of the spine observed. A diagnosis of hypertension, lumbago and cervicalgia was noted. Dr. Arumugam concluded that based on medical records, physical exam and history from the claimant "*there is no evidence of functional impairment at the time of the examination*." (Exhibit B7F). Some weight is accorded to this assessment, *as there is evidence of a degree of physical impairment.*

R. 16 (emphasis added).

*Kijakazi*, No. 1:20CV277, 2021 WL 3679304, at *10 (M.D.N.C. Aug. 19, 2021) ("Without quantifying 'a longtime [sic]' (Tr. 564), Dr. Williams's opinion lends little guidance to the ALJ in determining how long Plaintiff could stand."); *cf. Cynthia D. v. Saul*, No. 1:19-CV-03075-JTR, 2020 WL 3620091, at *4 (E.D. Wash. Apr. 28, 2020) ("With respect to Dr. Pellicer's opinion that Plaintiff could stand or walk for six hours in a workday with frequent breaks, Dr. Pellicer failed to explain what she meant by 'frequent.' It is unclear whether she was indicating more frequent breaks than would be normally allowed throughout the workday. Because this statement is vague and imprecise, the Court finds the ALJ was not required to credit or reject it."). The Court therefore finds no error in the ALJ's assessment of Dr. Morris' opinion. *See id*.

Plaintiff also suggests that the ALJ's consideration of Dr. Morris' opinion and the RFC determination was flawed because the ALJ conceded that there was evidence of degenerative disc disease in both the cervical and lumbosacral spines with radiculopathy, with impingement of the thecal sac and with multilevel neural foraminal stenosis. *Plaintiff's Memorandum of Law*, ECF No. 19, p. 9. However, Plaintiff does not identify—nor can the Court locate—any specific functional limitations flowing from these conditions that the ALJ failed to include in the RFC. *See id*.; *see also* R. 14. Without more, these medical findings, therefore, do not establish any functional limitations. *Cf. Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act").

In addition, Plaintiff complains that the ALJ "attributes almost no standing and walking limitations to these conditions." *Plaintiff's Memorandum of Law*, ECF No. 19, p. 9. However, Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, fails to develop this argument by explaining why the RFC for light work fails to accommodate these impairments or by identifying any specific, additional limitations supported by the record that the ALJ should have included in the RFC. *Id.* Notably, as previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted); *Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) ("Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh.").

Also unavailing is Plaintiff's contention that the ALJ was inconsistent when she discounted Dr. Arumugam's finding that "there is no evidence of functional impairment at the time of" his examination, yet found Dr. Morris' opinion of "cannot long stand/walk" to be of limited persuasion. *Plaintiff's Memorandum of Law*, ECF No. 19, p. 9. In discounting Dr. Arumugam's finding in this regard, the ALJ noted that "there is evidence of a degree of physical impairment[,]" R. 16, and explained how she accommodated Plaintiff's physical impairments and subjective complaints of pain by limiting Plaintiff to, *inter alia*, light exertion combined with climbing, postural, and environmental limitations. R. 17. The Court therefore finds no

inconsistency that would serve to undermine the ALJ's consideration of Dr. Morris' opinion or the RFC determination.

Plaintiff also complains that the ALJ relied on the state agency reviewing consultants even though those consultants did not have the benefit of the entire record. *Plaintiff's Memorandum of Law*, ECF No. 19, p. 8; *Plaintiff's Reply Brief*, ECF No. 23, p. 3; *see also* R. 17 ("The conclusions of the State agency consultants in finding the claimant capable of performing work related activities at alight exertional level, with postural limitations, are persuasive as they are consistent with the objective record, including evidence received at the hearing level."). Plaintiff's argument is not well taken. State agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Accordingly, the ALJ did not err when she characterized the state agency consultants' findings as persuasive simply because additional medical evidence was later submitted. *See id*. Notably, Plaintiff fails to explain how any specific medical evidence not before the state agency

reviewing consultants would result in a different RFC or an award of benefits. *See Plaintiff's Memorandum of Law*, ECF No. 19, p. 8; *Plaintiff's Reply Brief*, ECF No. 23, p. 3; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration"). Finally, to the extent that Plaintiff suggests that the ALJ's reliance on these consultants at step four of the sequential evaluation is inconsistent with the ALJ's severe impairment findings at step two, *Plaintiff's Reply Brief*, ECF No. 23, p. 3, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite his limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id.* (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id.*

For all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Morris' opinion.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

20

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 18, 2022                          *s/Norah McCann King*
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE